THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
JOHN TARKOWSKI, Defendant-Appellant.

Second District    No. 80-374

Opinion filed September 22, 1981.—Rehearing denied October 19, 1981.

John Tarkowski, of Wauconda, for appellant, *pro se*.

J. Michael Fitzsimmons, State's Attorney, of Wheaton (Barbara Preiner, Assistant State's Attorney, of counsel), for the People.

Mr. JUSTICE REINHARD delivered the opinion of the court:

On September 5, 1978, defendant was arrested for toll evasion (Ill. Rev. Stat. 1977, ch. 121, par. 100—27.1), resisting a peace officer (Ill. Rev. Stat. 1977, ch. 38, par. 31—1) and failure to surrender his drivers license (Ill. Rev. Stat. 1977, ch. 95½, par. 6—112). Those charges arose out of an incident which occurred at the Plaza 51 toll booth on the East-West Tollway near Oakbrook, Illinois.

On September 5, 1978, at approximately 12 noon, defendant testified he was traveling westbound on the Eisenhower Expressway from downtown Chicago when he inadvertently entered the tollway system. He drove up to the toll booth occupied by tollway employee John Cox, told him of the mistake he had made and asked Cox if he could turn around and proceed back in the direction from which he came. Cox told the defendant it was illegal to make U-turns on the tollway and that he would have to pay the 30-cent toll. Defendant was then instructed by Cox to park his car at the side of the road and go into the administration building to talk to his supervisor, Russell Duxbury. Defendant entered the building and related his story to Duxbury, who also insisted that he pay the toll.

Moments later, a State trooper, Eugenia Dresel, arrived and informed defendant that he would have to pay the toll despite his mistake in getting on the tollway. Despite such requests, defendant steadfastly refused to pay the toll, arguing that he never intended to get on, or use, the tollway. Although defendant denies it, Duxbury, Dresel, and Candy Cerny, a toll clerk, all testified that when Trooper Dresel asked defendant for his drivers license, he refused to tender it to her, but simply held it above her head. Subsequently, Troopers Moses and Brady appeared on the scene, and defendant was placed under arrest, patted down for weapons and transported to the Du Page County jail. While defendant asserts that he was physically abused by the officers at the time of the arrest, the other witnesses uniformly denied this, and the medical officer at the jail indicated that he saw no unusual bruises or marks about defendant's body. Bond was posted for defendant, and he was released pending trial.

Following a jury trial, defendant was convicted of resisting a peace officer and toll evasion. (The charge of failure to surrender his drivers license was dismissed prior to trial.) On April 19, 1979, defendant was sentenced to a one-year period of court supervision on both convictions, and was ordered to pay fines totalling $30 and court costs of $45. Defendant returned to court on April 21, 1980, and the trial judge terminated court supervision as satisfactorily completed. Despite defendant's objection that the bond money was not his, the court ordered that the fines and costs be deducted from the bond.

On May 15, 1980, defendant filed a notice of appeal from the April

19, 1979, order placing him on supervision and from the April 21, 1980, order terminating supervision and satisfying the fines and court costs from the bond. On April 8, 1981, the State filed a motion in this court to dismiss the appeal, contending that defendant's notice of appeal was untimely, and defendant filed a response thereto. On April 21, 1981, this court granted the State's motion to dismiss the appeal from the April 19, 1979, order placing defendant on supervision for want of a timely notice of appeal; with respect to the appeal from the April 21, 1980, order, the motion to dismiss and objections thereto were ordered taken with the case.

While defendant in his *pro se* brief sets out 12 separate issues for resolution by this court, only one relates to the April 21, 1980, proceedings, *i.e.*, whether the trial court acted improperly in ordering that the assessed fines and costs be satisfied from the money posted by a third person as defendant's bail; all the remaining issues relate to the original charges against him and his April 1979 trial.[1] Since this court has ruled already that defendant failed to perfect a timely notice of appeal from the April 19, 1979, order of supervision, we only need decide at this time the appealability of the April 21, 1980, order. However, since the issues raised with respect to the appealability of the April 19, 1979, order of supervision are relevant and important, we set out the rationale for our previous order herein.

The issue presented, simply stated, is whether a disposition of supervision pursuant to section 5—6—1 of the Unified Code of Corrections (Ill. Rev. Stat. 1977, ch. 38, par. 1005—6—1) is appealable and, if so, at what stage and by what authority.

While the practice of placing defendants on supervision was fairly common prior to 1976 (*People v. Breen* (1976), 62 Ill. 2d 323, 342 N.E.2d 31), it was not statutorily authorized under the Unified Code of Corrections until that year. In *People v. Breen*, the Illinois Supreme Court held that, absent appropriate legislation, a trial court is without authority to place a defendant on supervision. Our supreme court reviewed this case by exercising its supervisory authority (Ill. Const. 1970, art. VI, §16; Ill. Rev. Stat. 1979, ch. 110A, par. 315(a)) and declined to consider the question of the finality of the supervision order from which the appeal was sought. (*Breen*, at 326.) Within 7 months of that decision, the legislature amended section 5—6—1 of the Unified Code of Corrections (Ill. Rev. Stat. 1977, ch. 38, par. 1005—6—1) to add a new subsection (c), which provided for court supervision as an authorized disposition, and

---

[1] On appeal defendant has not raised the issue whether an order of supervision is a proper disposition for the toll evasion charge (Ill. Rev. Stat. 1977, ch. 121, par. 100—27.1), nor has he appealed from the imposition of the fines except as he contests their being taken from the bond. No issue is raised as to the constitutionality of sections 5—6—1(c) or 5—6—3.1. We therefore do not consider them.

added section 5—6—3.1 (Ill. Rev. Stat. 1977, ch. 38, par. 1005—6—3.1), which set forth the incidents and conditions of supervision. A disposition of probation without the entry of a prior, still-existing judgment has been a legislatively authorized disposition for a number of years under the Controlled Substances Act (Ill. Rev. Stat. 1979, ch. 56½, par. 1410) and the Cannabis Control Act (Ill. Rev. Stat. 1979, ch. 56½, par. 710). And, a disposition of continuance under supervision is permitted under the Juvenile Court Act (Ill. Rev. Stat. 1979, ch. 37, par. 704—7) without a prior finding or adjudication of the minor as a person described in section 2—1 of that Act.

Two years later, in *People v. Koonce* (1978), 65 Ill. App. 3d 86, 382 N.E.2d 447, the first district was faced with a case in which the defendant sought review of an order placing him on supervision. The court disposed of that issue summarily and concluded that, since at the time defendant was placed on supervision a finding of supervision was not a final order or sentence, the appeal would have to be dismissed. In so ruling, however, the court did note in *dictum* that the statute had been changed "so that supervision is a final order for purposes of appeal." (*Koonce*, 65 Ill. App. 3d 86, 88, 382 N.E.2d 447, 448.) The court was referring to newly-added subsection (i), which provides:

"A disposition of supervision is a final order for the purposes of appeal." Ill. Rev. Stat. 1977, ch. 38, par. 1005—6—3.1(i).

More recently, in *In re A.M.* (1981), 94 Ill. App. 3d 86, 418 N.E.2d 484, we dismissed an appeal by a minor from a "continuance under supervision" authorized under the Juvenile Court Act (Ill. Rev. Stat. 1979, ch. 37, par. 704—7), finding that there was no final, appealable order. However, the supervision provided for under that act may only be entered by the court "in the absence of objection made in open court by the minor, his parent, guardian, custodian or responsible relative." At that time, however, we reserved comment on the question of whether the legislature may confer appellate jurisdiction from orders of supervision, stating:

"In light of *In re Marriage of Lentz* (1980), 79 Ill. 2d 400, 403 N.E.2d 1036, our citation [of *Koonce*] expresses no opinion of *Koonce's* implication that the legislature may, by express appeal provisions, effectuate our jurisdiction to hear appeals from supervision orders not based on an adjudication of guilt." *In re A.M.* (1981), 94 Ill. App. 3d 86, 89 n.1, 418 N.E.2d 484, 486 n.1.

The question of the appealability of orders placing persons under supervision or under a probationary status under sections 10 and 410 has been addressed, but not squarely resolved, in several other appellate court decisions. (See, *e.g.*, *Sanner v. Champaign County* (1980), 88 Ill. App. 3d 491, 496-97, 410 N.E.2d 656; *People v. Martinez* (1977), 54 Ill.

App. 3d 607, 609, 370 N.E.2d 40.) At this time, however, we are compelled to address the question of whether section 5—6—3.1(i) of the Unified Code of Corrections (Ill. Rev. Stat. 1977, ch. 38, par. 1005—6—3.1(i)) confers appellate jurisdiction from orders placing defendants on court supervision, and, if not, whether such an order is appealable.

Article VI, section 6, of our constitution provides that final judgments of a circuit court are appealable as a matter of right "except that after a trial on the merits in a criminal case, there shall be no appeal from a judgment of acquittal." (Ill. Const. 1970, art. VI, §6.) Article VI, section 6 provides further, however, that our supreme court "may provide by rule for appeals to the Appellate Court from other than final judgments of Circuit Courts." (Ill. Const. 1970, art. VI, §6.) Article VI, section 16, of our constitution provides that "[t]he Supreme Court shall provide by rule for expeditious and inexpensive appeals." Ill. Const. 1970, art. VI, §16.

■■ Initially, it is clear to us in examining the nature of court supervision as set out in the Unified Code of Corrections (Ill. Rev. Stat. 1977, ch. 38, pars. 1005—6—1 and 1005—6—3.1) that such a disposition possesses none of the typical characteristics of finality and, therefore, does not result in a final judgment for purposes of appeal. There is not a "judgment" as that term is defined in section 5—1—12 of the Code (Ill. Rev. Stat. 1977, ch. 38, par. 1005—1—12), which is entered when an order of supervision is imposed. The status of the case under an order of supervision then becomes in the nature of a continuance until the conclusion of the period of supervision whereupon the court shall discharge the defendant and enter a judgment dismissing the charges if the defendant successfully complied with the conditions of supervision. (Ill. Rev. Stat. 1977, ch. 38, par. 1005—6—3.1(e).) Or, if there is a violation of a condition of the supervision order, such supervision may be continued, modified or terminated. (Ill. Rev. Stat. 1977, ch. 38, par. 1005—6—4.) Our supreme court in *People v. DuMontelle* (1978), 71 Ill. 2d 157, 374 N.E.2d 205, in its analysis of whether the probationary status contemplated by section 10 of the Cannabis Control Act (Ill. Rev. Stat. 1979, ch. 56½, par. 710) applied to the sentencing provisions of the Unified Code of Corrections, also termed the probationary status under section 10 as "in the nature of a continuance." (71 Ill. 2d 157, 164, 374 N.E.2d 205.) The language of the statute itself illustrates this lack of finality:

> "The court may, upon a plea of guilty or a stipulation by the defendant of the facts supporting the charge or a finding of guilt, defer further proceedings and the imposition of a sentence, and enter an order for supervision of the defendant * * *." (Ill. Rev. Stat. 1977, ch. 38, par. 1005—6—1(c).)

Also supportive of our conclusion that a disposition of supervision, as

provided for in the above statutory provision, is nonfinal is the recent decision by the first district in *City of Chicago v. Severini* (1980), 91 Ill. App. 3d 38, 414 N.E.2d 67. Although the holding as to the order of supervision appears to be based upon two grounds, namely, the lack of authority for this type of order to cases involving municipal ordinance violations and the absence of a finding or judgment, the court dismissed the defendant's appeal from an order of supervision, stating:

> "Our review indicates that no finding or judgment, other than the order of supervision, was announced or entered as to the alleged violations of the amusement licensing ordinance on the dates subsequent to January 11, 1979. Inasmuch as no final and appealable orders have been entered, the appeals as to those cases must be dismissed and the cases remanded to the trial court for further proceedings." 91 Ill. App. 3d 38, 48, 414 N.E.2d 67, 74.

The question then is whether, given the nonfinal nature of an order of supervision at the time of its imposition, the legislature can enact a provision expressly effectuating the appealability of an order granting supervision. The 1970 constitution confirmed the authority of the supreme court to determine the scope of appeals from other than final judgments. (*People v. Young* (1980), 82 Ill. 2d 234, 239, 412 N.E.2d 501.) A question similar to the one before us was addressed by our supreme court in *In re Marriage of Lentz* (1980), 79 Ill. 2d 400, 403 N.E.2d 1036, in regard to the following provisions of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1979, ch. 40, par. 101 *et seq.*):

> "A judgment of dissolution of marriage or of legal separation or of declaration of invalidity of marriage is final when entered, subject to the right of appeal." (Ill. Rev. Stat. 1977, ch. 40, par. 413(a).)

Although the court ultimately determined that the above provision was not an attempt by the legislature to define the appealability of those orders, but merely an effort to ensure that the parties not be subject to an interlocutory period between the determination of the grounds for dissolution and the effective date of the decree, the language of the court is instructive here:

> "If such a judgment [of dissolution] is not a final judgment, any attempt by the legislature to make it appealable would be a clear violation of article VI, section 6, of our constitution, which provides that the supreme court may provide by rule for appeals to the appellate court from other than final judgments of the circuit court. * * * If the judgment is a final judgment, there is a constitutional right to an appeal to the appellate court under article VI, section 6 * * *." 79 Ill. 2d 400, 406-07, 403 N.E.2d 1036, 1038.

■■ Unlike the statutory provision construed in *Lentz*, which lent itself to differing interpretations, section 5—6—3.1(i) of the Unified Code of Corrections (Ill. Rev. Stat. 1979, ch. 38, par. 1005—6—3.1(i)) permits of but one interpretation. That interpretation is that the General Assembly, through its legislative powers, has attempted to infringe upon the constitutional power of our supreme court to regulate appellate jurisdiction. Accordingly, we hold that section 5—6—3.1(i) violates article VI, section 6, and article VI, section 16, of our 1970 constitution and is void. (See *People v. Taylor* (1971), 50 Ill. 2d 136, 277 N.E.2d 878.) To the extent that *People v. Koonce* (1978), 65 Ill. App. 3d 86, 382 N.E.2d 447, may intimate a different conclusion, we decline to follow that decision. It follows then that the April 19, 1979, disposition of supervision cannot be appealable either as a final judgment or pursuant to legislative declaration.

We next consider whether our supreme court, as it has the sole authority to determine the scope of appeals from other than final judgments *(People v. Young* (1980), 82 Ill. 2d 234, 239, 412 N.E.2d 501), has provided for interlocutory appeal of an order of supervision. The only pertinent Supreme Court Rule which may be applicable states:

> "A defendant who has been found guilty and sentenced to probation or conditional discharge (see Ill. Rev. Stat. 1973, ch. 38, par. 1005—6—1 through 1005—6—4), or to periodic imprisonment (see Ill. Rev. Stat. 1973, ch. 38, par. 1005—7—1 through 1005—7—8), may appeal from the judgment and may seek review of the finding of guilty or the conditions of the sentence, or both. He may also appeal from an order modifying the conditions of or revoking such a sentence." (Ill. Rev. Stat. 1979, ch. 110A, par. 604(b).)

Rule 604(b), which had been applicable only to judgments admitting a defendant to probation or judgments altering the conditions of, or terminating probation (see *People v. Stueve* (1977), 66 Ill. 2d 174, 361 N.E.2d 579), was amended in 1974 to include appeals from sentences of conditional discharge and periodic imprisonment imposed under the Unified Code of Corrections. (See Ill. Rev. Stat. 1979, ch. 38, pars. 1005—6—1 through 1005—6—4 and pars. 1005—7—1 through 1005—7—8.) Comments of the Supreme Court Rules Committee (Ill. Ann. Stat., ch. 110A, par. 604(b), Committee Comments, at 61-62 (Smith-Hurd 1976)) state that this amendment was to cover new forms of sentence created by the adoption in Illinois of the Unified Code of Corrections. While an order of supervision was not a statutory disposition under the Code until 1976 and therefore could not have been included in the 1974 rule amendment, we also note that the rule is now limited by its references to specific statutory provisions to sentences under the Unified Code of Corrections.

While we need not decide herein whether Rule 604(b) is broad

enough to include appeals from dispositions under section 10 of the Cannabis Control Act and section 410 of the Controlled Substances Act[2], we do believe that it is implicit in Rule 604(b) that other dispositions from time to time authorized under the Code by appropriate legislation and of a similar nature to those specified in the rule be appealable pursuant to this rule. It would seem to us to be inconsistent for the supreme court to permit appeals when a defendant is sentenced to probation, conditional discharge or periodic imprisonment (see Ill. Rev. Stat. 1979, ch. 110A, par. 604(b)), while disallowing appeals from orders of supervision now permitted under the Uniform Code of Corrections, since the adverse consequences flowing from imposition, or unsuccessful termination, of court supervision can be nearly as substantial.

For example, in entering an order for court supervision, the trial court can assess a fine of up to $1,000 plus court costs (depending on the class of misdemeanor), as well as impose onerous conditions of supervision. (See Ill. Rev. Stat. 1977, ch. 38, par. 1005—6—3.1; Ill. Rev. Stat. 1977, ch. 38, par. 1005—9—1.) Furthermore, if a petition is filed charging a violation of a condition of supervision and, after a hearing, the court finds that such a violation has occurred, the court may revoke the supervision and impose any other sentence that was available under section 5—5—3 of the Unified Code of Corrections (Ill. Rev. Stat. 1977, ch. 38, par. 1005—5—3) at the time of initial sentencing (Ill. Rev. Stat. 1977, ch. 38, par. 1005—6—4(e)), including a term of imprisonment. Also, restitution may be ordered as a condition which could impose a substantial burden upon a defendant. Ill. Rev. Stat. 1977, ch. 38, par. 1005—6—3.1(c)(9).

■■■ Therefore, although the express language of Supreme Court Rule 604(b) (Ill. Rev. Stat. 1979, ch. 110A, par. 604(b)) does not provide for appeals from dispositions of supervision, we conclude that the rule encompasses such appeals by necessary implication. (*Cf. Sanner v. Champaign County* (1980), 88 Ill. App. 3d 491, 496-97, 410 N.E.2d 656.) Defendant, therefore, had a right of appeal from the April 19, 1979, order of supervision, which expired 30 days thereafter. Having failed to file a notice of appeal within that time, we lack jurisdiction to review the April 19, 1979, order.

We do not regard this result to be inconsistent with our recent decision in *In re A.M.* (1981), 94 Ill. App. 3d 86, 418 N.E.2d 484, considering the special purpose of the Juvenile Court Act (Ill. Rev. Stat. 1979, ch. 37, par. 701—1 *et seq.*), the limitation of its use upon objection by a proper party and the differing penalties involved. For example, a contin-

---

[2] We do note, however, that significant procedural differences exist between the disposition of supervision under the Unified Code of Corrections and probation under section 10 of the Cannabis Control Act and section 410 of the Controlled Substances Act, not the least of which is that the defendant must consent to being placed on probation under the latter sections.

uance under supervision pursuant to section 4—7 of the Juvenile Court Act (Ill. Rev. Stat. 1979, ch. 37, par. 704—7) does not involve the potential fines and onerous conditions involved in court supervision under the Unified Code of Corrections (Ill. Rev. Stat. 1979, ch. 38, par. 1001—1—1 *et seq.*).

Finally, we must address the question of whether defendant has a right of appeal from the April 21, 1980, order terminating supervision. A similar issue was presented in *In re Marriage of Roberts* (1980), 84 Ill. App. 3d 538, 406 N.E.2d 1. In *Roberts*, the court was faced with an appeal from an order of supervision imposed after a finding of criminal contempt. In dismissing the appeal, that court said:

> "Accordingly, we hold that we are without jurisdiction to consider petitioner's appeal. Any issue pertaining to the contempt order was rendered moot when petitioner was dismissed from supervision, for such a dismissal is 'deemed without adjudication of guilt and shall not be termed a conviction * * *.' Ill. Rev. Stat., 1978 Supp., ch. 38, par. 1005—6—3.1(f).)" 84 Ill. App. 3d 538, 542, 406 N.E.2d 1, 3.

Even assuming that the judgment here dismissing the charges and discharging the defendant is a final one, we consider it akin to a judgment of acquittal, which is expressly nonappealable under our constitution. Ill. Const. 1970, art. VI, §6; see also *People v. Pearson* (1973), 16 Ill. App. 3d 543, 549, 306 N.E.2d 539.

Accordingly, we dismiss defendant's appeal from the April 21, 1980, order. His sole right of appeal was from the order of supervision on April 19, 1979. Having failed to execute a timely notice of appeal from that order, he cannot now, after all charges have been dismissed, complain of trial court error.

Appeal dismissed.

NASH and UNVERZAGT, JJ., concur.