THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* RONALD L. JONES, Defendant-Appellant.

Fourth District   No. 16612

Opinion filed September 16, 1981.

Michael J. Meyer, of Ealy, Bower and Meyer, of Effingham, for appellant.

Chris Freese, State's Attorney, of Sullivan (Robert J. Biderman and Debra A. Buchman, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE WEBBER delivered the opinion of the court:

Defendant was convicted in the circuit court of Moultrie County of the offense of driving a motor vehicle when his license was revoked, in violation of section 6—303(a) of the Illinois driver licensing law (Ill. Rev. Stat. 1979, ch. 95½, par. 6—303(a)). He was sentenced to 10 days' imprisonment and fined $300 and costs.

On appeal, defendant raises four issues: (1) waiver of jury trial; (2) conflict in the licensing statutes; (3) hearsay evidence; and (4) affirmative defense.

The evidence at trial indicated that defendant was involved in a motor vehicle accident on February 8, 1979. A deputy sheriff investigated the accident and testified that, at the time, defendant had a Texas driver's license. The State stipulated that the Texas license was valid. Upon further investigation the deputy discovered that defendant's Illinois license had been revoked. The State introduced evidence at trial that the revocation was made on January 2, 1976, and had been extended to August 9, 1978.

Defendant testified and admitted that he drove the vehicle on February 8, 1979. He further indicated that he had moved from Texas back to Illinois on December 20, 1978. The trial court indicated that since the State had stipulated to the validity of the Texas license, it would presume that defendant was a resident of Texas at the time it was issued. Defendant testified that sometime after he returned to Illinois he went to a driver's licensing station in Effingham and inquired about driving on his Texas license. Someone told him that he could do so. The State objected to the answer as hearsay and the trial court sustained the objection.

Further evidence obtained after a continuation showed that defendant had applied for his Texas license on August 23, 1978. On the application in Texas he indicated that he had an Illinois license through 1979 and that his driving privileges in Illinois were not suspended, revoked, canceled or denied, and that his license in Illinois had never been suspended, revoked, canceled, or denied.

Defendant's first issue is that he was deprived of his right to trial by jury. We note in passing that this alleged error was never called to the trial court's attention for a ruling and no motion for new trial was filed (Ill. Rev. Stat. 1979, ch. 38, par. 116—1). While the issue might be disposed of on this basis (*People v. Wright* (1980), 80 Ill. App. 3d 927, 400 N.E.2d 731), we find stronger evidence of waiver in the actions of defendant and his counsel. A brief recapitulation of the sequence of events is as follows:

March 26, 1979: defendant arraigned with counsel present; plea of not guilty; demand for jury trial; allotted for jury trial in May, 1979.

April 24, 1979: motion by defendant to vacate May setting; continued to August, 1979.

October 17, 1979: cause continued to October 25, 1979, for plea; defense counsel present.

October 25, 1979: motion by defendant for continuance; motion allowed.

January 11, 1980: motion by defendant for continuance; continued to January 22, 1980.

January 22, 1980: motion by the People to allot for bench trial; allotted for February 25, 1980.

January 23, 1980: circuit clerk's proof of notice of bench trial on February 25, 1980, 9:30 a.m. on file.

February 13, 1980: circuit clerk's proof of notice of bench trial continuance from 9:30 a.m. to 1:30 p.m. on February 25, 1980, on file.

February 21, 1980: motion for continuance by defendant; objection of the People; objection overruled; allotted for trial February 27, 1980, 1:30 p.m.

February 27, 1980: trial commences; People's evidence heard; defendant's evidence heard; arguments heard; motion by defendant to reopen; strenuous objection by the People; objection overruled; continued 30 days for additional defense evidence.

June 30, 1980: on court's motion, cause specially set for hearing July 7, 1980, 1:30 p.m.

July 7, 1980: motion by defendant for continuance; strenuous objection by the People; motion allowed; continued to August 4, 1980, 1:30 p.m.

July 14, 1980: motion by defendant for continuance; motion denied.

August 4, 1980: trial resumed; additional evidence for defendant not available but representations of counsel received; judgment entered in favor of the People and against defendant; sentence imposed; admonition as to right to appeal given to defendant; all motions ordered filed within 30 days; in absence of motions, jail term to commence September 5, 1980.

September 2, 1980: notice of appeal on file; appeal bond fixed; mittimus stayed pending appeal.

While we are always reluctant to infringe in any way on the basic right to jury trial, yet the history of this case as recited above has per-

suaded us that defendant has waived that right. He relies principally on *People v. Ceaser* (1974), 17 Ill. App. 3d 650, 307 N.E.2d 753. In that case the defendant participated in a two-day bench trial without raising the question of jury waiver. The appellate court held that there must be something more than the trial. We believe that that "more" is here present.

Defendant actively participated in the proceedings from their very inception, mostly by motions for continuance. More compellingly, the circuit clerk's notice of January 23, 1980, clearly states "bench trial," although other boxes on the notice form providing for jury trial and other matters are present. "Bench trial" appears in upper case letters, typed on a blank line, which is provided at the end of the column of various other proceedings which the clerk might use for such other proceedings. We fail to see how the notice could be more obvious.

In addition to the clerk's notice, the record also contains an acknowledgment by defense counsel that the trial is to be at bench. Counsel's written motion for continuance on February 21, 1980, contains the following recital: "That the above entitled matter [*i.e.*, the instant case] is set for Bench Trial on Monday, February 25, 1980."

■■ The record demonstrates more than passive acquiescence; it shows a positive acknowledgment that the trial is to be at bench. *Ceaser* is inapposite and defendant's contention is without merit.

Defendant's second issue concerns the interplay of various sections of the Illinois driver licensing law (Ill. Rev. Stat. 1979, ch. 95½, par. 6—100 *et seq.*) (Law). His basic argument rests on section 6—102(7) of the Law (Ill. Rev. Stat. 1979, ch. 95½, par. 6—102(7)), which states:

> "The following persons are exempt from the requirements of Section 6—101 and are not required to have an Illinois drivers license or permit if one or more of the following qualifying exemptions are met and apply:
>
>    &#42; &#42; &#42;
>
> 7. A nonresident who becomes a resident of this State, may for a period of the first 90 days of residence in Illinois operate any motor vehicle which he was qualified or licensed to drive by his home state or country so long as he has in his possession, a valid and current license issued to him by his home state or country."

Defendant's argument is that he held a valid Texas license and therefore under the foregoing section he could operate a motor vehicle with that license for 90 days; that his driving on the occasion in question was within 90 days of his return to Illinois and therefore was not a violation of section 6—303(a) under which he was charged. He concludes that there is a conflict between sections 6—102(7) and 6—303(a) and that such a conflict should be strictly construed in his favor.

Defendant acknowledges two other sections of the Law, but argues that they do not apply to him. Section 6—208(b) (Ill. Rev. Stat. 1979, ch. 95½, par. 6—208(b)), provides:

"Any person whose license or permit or privilege to drive a motor vehicle on the highways has been revoked shall not be entitled to have such license or permit or privilege renewed or restored. However, such person may make application for a license as provided by Section 6—106 of this Act:

* * *

(2) After the expiration of 1 year from the date of revocation * * *.

In either event, the Secretary of State shall not issue such license unless and until he is satisfied after investigation of such person that to grant the privilege of driving a motor vehicle on the highways will not endanger the public safety or welfare."

Defendant argues that at the time one year from the date of revocation occurred, he was a resident of Texas and hence not able to apply for an Illinois license. Without deciding, as we need not under the facts here present, whether residence in Illinois is necessary to obtain a license, we observe that the record is barren of any effort by defendant to obtain one during the period from December 20, 1978, the date of his return to Illinois, to February 8, 1979, the date of his offense.

Defendant also acknowledges section 6—210 of the Law (Ill. Rev. Stat. 1979, ch. 95½, par. 6—210), which provides:

"Any resident or nonresident whose drivers license or permit or privilege to operate a motor vehicle in this State has been suspended or revoked as provided in this Act shall not operate a motor vehicle in this State:

* * *

(2) After such revocation until a license is obtained when and as permitted under this Act * * *."

Defendant argues that his purported exemption under section 6—102(7) by obtaining a valid Texas license operates as compliance with section 6—210. We disagree.

Defendant's argument might have some validity if Texas were a party State to the Driver License Compact (Ill. Rev. Stat. 1979, ch. 95½, par. 6—700 et seq.; Ill. Ann. Stat., ch. 95½, par. 6—700, Complementary Legislation, at 398 (Smith-Hurd 1971)). Since it is not, there is no apparent method by which the Texas authorities might become aware of the Illinois revocation. Even if Texas were a party State to the Compact, it is only speculative whether it would have issued a license under the provisions of section 6—704 (Ill. Rev. Stat. 1979, ch. 95½, par. 6—704), which provides in substance that a party State may issue a license after revoca-

tion in another State when one year has elapsed from the revocation, provided the issuing authority determines that it will be safe to do so.

While it is true that penal statutes are to be construed strictly in favor of an accused, it is likewise true that they should not be construed so rigidly as to defeat the intent of the legislature. (*People v. Bratcher* (1976), 63 Ill. 2d 534, 349 N.E.2d 31). In the instant case we find no ambiguity or conflict among the sections which have been discussed.

Section 6—102(7) is a comity provision which allows a newcomer to enjoy a grace period during which to make application and to secure an Illinois license. Section 6—210 by its obvious terms prohibits operation of a motor vehicle under a foreign license when the Illinois license has been revoked and requires that a license be obtained under the Law. Section 6—208(b) allows one whose license has been revoked to make application for restoration. There is no guarantee that a new license will issue; the statute is quite specific that there is no entitlement to a new license. Read as a whole, these sections complement one another and present a logical statutory scheme.

■■ Defendant's Texas license, however obtained, was irrelevant to this case.

Defendant next complains and assigns as error the ruling of the trial court in sustaining an objection to the statement made at the licensing station in Effingham. As has already been indicated, he went to that station upon his return to Illinois and inquired about the validity of his Texas license. He testified that some unknown person there told him that it was valid for driving purposes.

He asserts that the statement was offered, not for its truth, but for the fact that it was made and hence is not hearsay. We assume that defendant is referring to the rule found in 6 Wigmore, Evidence §1789, at 314 (Chadbourne rev. 1976):

> "Wherever an utterance is offered to evidence the *state of mind* which ensued *in another person* in consequence of the utterance, it is obvious that no assertive or testimonial use is sought to be made of it, and the utterance is therefore admissible, so far as the hearsay rule is concerned."

See also *McManus v. Feist* (1966), 76 Ill. App. 2d 99, 221 N.E.2d 418.

■■ On this theory the statement was admissible to show defendant's belief that he could drive on his Texas license. It was error to sustain the objection, but as will be seen from our discussion of defendant's final issue, the error was harmless.

That final issue is closely allied with the statement just discussed and is largely dependent upon it. Defendant claims that by the introduction of that statement, had he been permitted to do so, he raised the affirmative defense of reliance upon an official interpretation of a statute made by an

officer legally authorized to do so. (Ill. Rev. Stat. 1979, ch. 38, par. 4—8(b)(4).) Having raised some evidence of an affirmative defense under the foregoing section, he claims that the burden of proof then shifted to the State to rebut it and it did not do so. We do not agree.

The value of any out-of-court statement of the kind present here depends upon the credibility of the declarant and at least a *prima facie* showing of such credibility must be made. Such was not done in the instant case. Defendant offered no shred of evidence as to the identity of the person he spoke with other than that it was someone present in the licensing station. Defendant in his testimony referred to the person as "him," without even identifying him as an officer. Furthermore, he could not place the time of the visit, saying only that it was sometime after Christmas.

■■ While there has been no unanimity of opinion as to the quantum of evidence necessary to require rebuttal evidence in the case of an affirmative defense, we note that the supreme court has held in the case of the affirmative defense of insanity the evidence must be sufficient to raise a reasonable doubt. (*People v. Redmond* (1974), 59 Ill. 2d 328, 320 N.E.2d 321.) The evidence presented in the instant case was insufficient as a matter of law to require rebuttal from the State.

The judgment of the circuit court of Moultrie County is affirmed.

Affirmed.

MILLS and LONDRIGAN, JJ., concur.